# **Exhibit A**

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

# SUPERIOR COURT

___ *Providence County*
Licht Judicial Complex
250 Benefit Street
Providence, Rhode Island 02903

___ *Kent County*
Kent County Judicial Complex
222 Quaker Lane
Warwick, Rhode Island 02886

X *Newport County*
Murray Judicial Complex
45 Washington Square
Newport, Rhode Island 02840

___ *Washington County*
McGrath Judicial Complex
4800 Tower Hill Road
Wakefield, Rhode Island 02879

CIVIL ACTION, FILE No. ..........................

FORTY 1 NORTH, LLC
**Plaintiff**

ARCHITECTURAL SYSTEMS, INC.
**Defendant**

## *Summons*

*To the above-named Defendant:* Architectural Systems, Inc.
150 West 25th Street, 8th Floor
New York, NY 10001

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon Stephen J. MacGillivray, Esq. Plaintiff's attorney, whose address is Edwards Angell Palmer & Dodge LLP 2800 Financial Plaza, Providence, Rhode Island 02903 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

[signature]
CLERK

Dated: August , 2008

**(Seal of the Superior Court)**

S-135 (REV. 02/07)

STATE OF RHODE ISLAND
NEWPORT SC.

SUPERIOR COURT

FORTY 1° NORTH, LLC,

Plaintiff,

v.

ARCHITECTURAL SYSTEMS INC.,

Defendant.

C.A. No. NC 08-0479

## COMPLAINT

This is a civil action for money damages, and/or rescission and specific performance.

## PARTIES

1. Plaintiff Forty 1° North, LLC ("Forty 1" or "Plaintiff") is a limited liability company organized under the laws of the State of Rhode Island with a principle place of business located at 351 Thames Street, Newport, Rhode Island, 02840.

2. Defendant Architectural Systems Inc. ("ASI" or "Defendant") is a corporation organized under the laws of the State of New York with a principle place of business located at 150 West 25th Street, 8th Floor, New York, New York, 10001.

## JURISDICTION

3. Defendant has sufficient contacts with Rhode Island to subject it to personal jurisdiction in this Court and the amount in controversy is sufficient to invoke this Court's jurisdiction.

## FACTUAL ALLEGATIONS

4. Plaintiff is a world-class Newport, Rhode Island waterfront marina and resort, offering accommodations, marina services, multiple dining options, accommodations for private events, and other associated and related services.

5. Plaintiff's facilities include an outdoor, high-end waterfront bar area sheltered from precipitation by a pavilion-type roof structure (the "Bar") and operated seasonally.

6. During early 2007, Plaintiff sought to purchase a bar top with suitable physical and aesthetic characteristics to compliment the atmosphere and ambience at the Bar.

7. Defendant is a provider of architectural materials used for commercial interiors, including countertops, and including specialty countertops for use in a bar or restaurant setting. Defendant attempts to profit from the regular marketing and sale of such architectural materials, including specialty countertops.

8. Plaintiff purchased the Countertop from Defendant in May 2007 for a total purchase price of $38,064.00. The total cost of the purchase and installation of the Countertop was $44,094.00

9. In deciding to purchase the Countertop from Defendant, Plaintiff relied heavily upon, among other things, Defendant's representations (1) that the Countertop would have "[u]ltra-clear glass permanently affixed to exotic stone slabs to achieve superior surface protection while retaining and showcasing the beauty of natural stone" and (2) that "[i]ntrusion of natural and chemical substances into porous marbles, sandstones and limestones [would be] completely prevented" by the Countertop. (See Exhibit A (portion of Defendant's website containing the above-referenced statements regarding Fusionstone™ countertops generally).)

10. In deciding to purchase the Countertop from Defendant, Plaintiff also relied upon assurances given by Defendant's then agent, Rita White ("White"), and other agents of Defendants including, on information and belief, Rachael Cooper, that the Countertop was suitable for outdoor use.

11. In deciding to purchase the Countertop from Defendant, Plaintiff also relied upon statements by Defendant that the Countertop would be suitable for its intended purpose as a bar top.

12. On information and belief, Defendant made these representations with an intent to induce Plaintiff to purchase a Fusionstone™ countertop from Defendant.

13. Plaintiff justifiably relied on Defendant's representations referenced in Paragraphs 9 through 11 of this Complaint in Plaintiff's decision to purchase the Countertop because, among other things, Defendant holds itself out as an expert and industry leader, and was recommended to Plaintiff by at least one third party.

14. In early-mid May 2007, after Plaintiff purchased the Countertop, the architect that Plaintiff used to design the Bar, DAS Architects, Inc. ("DAS"), began communicating with Defendant regarding the plan specifications, elevations, and section sizes needed by Defendant to manufacture the Countertop.

15. Defendant eventually manufactured or caused the manufacture of the Countertop and the Countertop arrived at Plaintiff's location in July, 2007.

16. Shortly after the Countertop arrived at Plaintiff's location, South County Post & Beam, Inc. ("SCPB") installed the Countertop at the Bar while following whatever limited instructions accompanied the Countertop when it arrived from Defendant. The instructions received only addressed the method of cutting the Countertop, and did not address other issues such as and including tolerances of Countertop joints, etc.

17. After SCPB installed the Countertop at the Bar, Plaintiff paid Defendant the agreed-upon $38,064.00 in full for the Countertop (which excludes costs of time and materials paid for installation).

18. Almost immediately after installation of the Countertop at the Bar was complete, Plaintiff began to experience serious problems with the Countertop and immediately started to communicate the existence of such defects to Defendant. On August 24, 2007, DAS, on behalf of Plaintiff, communicated to Defendant the following defects related to the Countertop:

(1) The Countertop chipped in dozens of areas on the flat top of the Countertop as well as on the inside corners and outside edges of the bar, leaving glass fragments in the drink rail, on the bar top and around the point of sale;

(2) The glass delaminated from the marble in multiple locations, up to 3 or 4 square feet in size, which led to discoloration of the Countertop;

(3) Various liquids migrated under the glass and decolorized the Countertop;

(4) A 1" by 1" "lip" affixed to the Countertop popped off in one area and became loose in other areas; and

(5) A 6" – 9" crack appeared in the Countertop.

19. Plaintiff immediately became concerned for the safety of its patrons because, on several occasions, glass chipped from the Countertop in the presence of Bar patrons. On at least one occasion, a Bar patron had chipped Countertop glass in his/her drink glass.

20. The dangerous situation posed by the Countertop forced Plaintiff to cover the bar edges in clear tape and take other measures to ensure the safety of Bar patrons. These measures damaged the aesthetics of the Countertop.

21. Shortly after receiving notice of the Countertop problems described in Paragraph 18, on or about August 28, 2007 Defendant's agent Falco admitted to DAS that Fusionstone

countertops generally are chemically strengthened and resistant to any chipping. However, without actually examining the Countertop, Falco began to blame "installation" as the cause for the Countertop's problems and defects.

22. Falco visited Forty 1 in early September, 2007 to examine the problems with the Countertop.

23. After Falco's visit, Falco began a pattern of elusive and non-committal behavior denying responsibility on behalf of Defendant. Additionally, Falco began avoiding the issue of chipping glass on the surface of the Countertop. Examples of Falco's elusive and non-committal behavior include the following:

(1) Falco continuously blamed the "installation" of the Countertop as the cause of its problems, and asserted that Defendant was not involved in any phase of the installation process, when, in actuality, Defendant sent correspondence directly to SCP&B containing specific instructions relative to Fusionstone™ products;

(2) Falco continuously blamed the "installation" of the Countertop as the cause of its problems but denied the request of DAS and/or Plaintiff to recommend an installer prior to installation of the Countertop;

(3) Falco continuously blamed the "installation" of the Countertop as the cause of its problems but ignored the fact that most of the Countertop's problems existed relative to the flat and edge areas of the fused glass and not the underlying stone;

(4) Falco continuously blamed certain of the Countertop's problems on its "use outdoors" and denied that Defendant ever had any

knowledge that Plaintiff would use the Countertop at an outdoor bar, despite the representations of Defendant's then-agent White to the contrary and despite the construction drawings provided by Plaintiff to Defendant which implied an open-air structure; and

(5) Falco refused to accept responsibility even for the Countertop's extensive chipping, which was obviously unrelated to any alleged installation issue; instead, Falco suggested that Plaintiff create stainless steel, plastic, or acrylic "caps" to protect the drink rail area and that Plaintiff use a diamond hand file to make many of the existing chips "look better."

24. During this same period of time, it became evident that the various representations made by Defendant regarding the quality and character of the Countertop, referenced in Paragraphs 9 through 11 of this Complaint, were false. For example, in addition to the Countertop's failure to perform as promised, Defendant, through Falco, informed Plaintiff for the first time that, among other things, it was necessary for Plaintiff to treat the Countertop with a particular "stone sealer" to ensure that the Countertop was not damaged by drink spills or other moisture. This directive was contrary to Defendant's representations that the Countertop was impervious to moisture.

25. Any installation, maintenance, or other instructions which Defendant sent or failed to send with the Countertop were either deficient in addressing installation procedures related to the unique nature of the Countertop or were necessary for proper installation but not provided to SCB&P by Defendant.

26. Plaintiff continued to experience serious Countertop chipping and continued to discover new Countertop problems and defects subsequent to Falco's September, 2007 visit to Forty 1. Examples of these continuous problems with the Countertop include the following:

(1) Additional chipping on the patron's side of the Countertop;

(2) 9" – 16" cracks running through the glass and marble in three different sections of the Countertop;

(3) Additional severe delamination of the glass from the underlying stone;

(4) The glass top of an entire six square foot are of the Countertop shattered into hundreds of pieces for no apparent reason; and

(5) Additional Countertop discoloration.

27. Notwithstanding the Countertop's continuing disintegration, and notwithstanding Defendant's refusal to accept responsibility for such problems, Plaintiff continued to attempt dialogue with Defendant to find a solution. Defendant, through Falco, continued to offer only superficial solutions to the Countertop problems and, in particular, continued to ignore suitable potential remedies to the main defect of continuous chipping along the Countertop's flat surface and edges.

28. Finally, recognizing that only replacement of the entire Countertop would sufficiently remedy its problems and defects, Plaintiff suggested to Defendant in or around January 2008 that Plaintiff would consider a lesser-quality replacement countertop from Defendant whereby Defendant would provide the inferior countertop to Plaintiff free of any additional charge and whereby Plaintiff would undertake the expense of demolishing the existing Countertop and installing the replacement countertop. Plaintiff communicated the urgency of

deciding on a remedy to Defendant – Plaintiff required that a replacement countertop be delivered by May 1, 2008 for the start of the new summer season.

29. Defendant at first appeared receptive to Plaintiff's idea, and sent Plaintiff a series of samples from which to select a replacement countertop. In February 2008, Plaintiff selected the ASI Crystallized Glass Stone Collection Zebra White-FLHSN016 (the "Replacement Countertop") to replace the Countertop.

30. After considerable foot-dragging by Defendant on a developing a suitable solution to the Countertop's problems and on developing a revised quote for the Replacement Countertop, Defendant refused to fully honor its obligation to replace the Countertop notwithstanding the urgency of the situation as communicated to Defendant by Plaintiff, and notwithstanding that Plaintiff was willing to settle for an inferior replacement. Defendant refused to supply the Replacement Countertop to Plaintiff's satisfaction.

**COUNT I**

**Breach of Implied Warranty of Merchantability**

31. Plaintiff incorporates Paragraphs 1 – 30 above herein by reference.

32. Defendant is a merchant who regularly sells goods, including products such as the Countertop.

33. Defendant sold the Countertop to Plaintiff, and such Countertop was not merchantable at the time of sale.

34. The Countertop's lack of merchantability proximately caused injury and damages to Plaintiff and/or its property.

35. Plaintiff promptly notified Defendant of the Countertop's defects and the resulting injuries and damages suffered by Plaintiff.

**COUNT II**

**Fraudulent Inducement (Rescission of Contract or Damages)**

36. Plaintiff incorporates paragraphs 1 – 35 above herein by reference.

37. Defendant falsely represented to Plaintiff that the Countertop was, among other things, impervious to penetration by liquids, chemically strengthened to resist chipping, and suitable for outdoor use.

38. Defendant intended to induce Plaintiff to rely on such false representations in deciding to purchase the Countertop.

39. Plaintiff justifiably relied on such false representations by Defendant.

40. Plaintiff's justifiable reliance on such false representations by Defendant caused the injuries and damages suffered by Plaintiff.

41. Plaintiff seeks either damages under its contract to purchase the Countertop from Defendant or rescission of its contract to purchase the Countertop from Defendant based on Defendant's fraudulent inducement.

**COUNT III**

**Negligent Misrepresentation**

42. Plaintiff incorporates paragraphs 1 – 41 above herein by reference.

43. The aforementioned representations made by Defendant about the quality and character of the Countertop were misrepresentations of material fact.

44. Defendant made such representations either knowing that they were false, without knowledge as to their truth or falsity, or where under the circumstances Defendant should have known of their falsity.

45. Defendant made such representations intending to induce potential customers, such as and including Plaintiff, to act on them.

46. Plaintiff's justifiable reliance on such misrepresentations by Defendant caused the injuries and damages suffered by Plaintiff.

**COUNT IV**

**Unjust Enrichment**

47. Plaintiff incorporates Paragraphs 1 – 46 above herein by reference.

48. Plaintiff, by paying the Countertop purchase price in full to Defendant, conferred a benefit upon the Defendant.

49. Defendant appreciated Plaintiff's payment of the full purchase price by accepting such payment without protest.

50. In return for the full purchase price, Defendant sold Plaintiff a severely defective and dangerous Countertop, which Plaintiff must replace.

51. Under these circumstances, it would be inequitable for the Defendant to retain the benefit of Plaintiff's payment in full of the purchase price without providing something of equal value to Plaintiff, or without returning the purchase price to Plaintiff.

52. The unjust enrichment experienced by Defendant damaged Plaintiff.

**Request for Relief**

WHEREFORE, Plaintiffs demand relief as follows:

53. Issuance of a judgment against Defendant on Counts I through IV above;

54. That the Court award Plaintiff damages in an amount which will compensate Plaintiff for the losses it has suffered as a result of Defendant's breach of warranty(ies), fraudulent inducement, negligent misrepresentation, and/or unjust enrichment, together with pre-judgment and post-judgment interest;

55. That the Court order Defendant to reimburse Plaintiff for all costs and attorneys' fees it incurred as a result of Defendant's actions as described herein;

56. The costs of this action, interest, attorney's fees; and

57. Such further relief as this Court deems appropriate.

**Demand for Jury Trial**

Plaintiffs demand a jury trial on all issues so triable.

Forty 1° North, LLC
Plaintiff

By its Attorneys,

Stephen J. MacGillivray (#5416)
Joseph A. Farside (#7559)
EDWARDS ANGELL PALMER
& DODGE LLP
2800 Financial Plaza
Providence, RI 02903
Tel. (401) 274-9200
Fax (401) 276-6611

Date: August 15th, 2008

Exhibit A

ASI Specialty Product

# Fusionstone™

NEW

Ultra-clear glass is permanently fused to exotic stone slabs to achieve superior surface protection while retaining and showcasing the beauty of natural stone. The Fusionstone™ proprietary process eliminates adhesion lines, and the material appears entirely translucent from edge to edge. Intrusion of natural and chemical substances into porous marbles, sandstones and limestones is completely prevented.




**Specifications**

- Standard size: 59" x 94", 47" x 78", custom fabrication of shapes and edging available for all areas of hospitality design
- Thickness: 2.4 cm or 3.4 cm stone with 4 mm glass standard
- Product is highly resistant to bases, acids, organic substances, scratching and high temperatures
- It is possible to incorporate LED lighting behind the material or edge lighting, achieving a luminous translucency
- Extensive selection of stones to fit every aesthetic
- 500/SF minimum

## Edge Details



straight edge with upper bevel and lower bevel | straight edge with radius | coving with lower bevel | bead-moulding

**ARCHITECTURAL SYSTEMS, INC.**
Tel: 800.793.0224 • Fax: 800.793.0225 • sales@archsystems.com
www.archsystems.com